IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| AVENTIS CROPSCIENCE, N.V., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:00CV463 |
| | ) | |
| PIONEER HI-BRED | ) | |
| INTERNATIONAL, INC., and | ) | |
| DOW AGROSCIENCES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

BEATY, Chief District Judge.

I. INTRODUCTION

This matter is presently before the Court on a Motion for Determination of Exceptional Case [Doc. #358] and a Motion for Fees and Costs [Doc. #360] by Defendant Dow AgroSciences, LLC ("DAS"). Plaintiff Bayer BioScience, N.V. ("Bayer")[1] initially filed this patent action against DAS and another Defendant, Pioneer Hi-Bred International, Inc. ("Pioneer")(collectively, "Defendants"), claiming that four of Bayer's United States Patents (collectively, the "patents-in-suit") were infringed upon. However, Judgment has now been entered in Defendants' favor on all claims. Therefore, the only remaining matters are the present Motion for Determination of Exceptional Case and Motion for Attorneys' Fees and Costs by Defendant DAS.

---

[1] As the assignee to the patents-in-suit, Bayer substituted as the successor in interest to the original Plaintiff in this suit, Aventis CropScience, N.V. In the interests of consistency, the Court will refer to Plaintiff as "Bayer" in all instances throughout the course of this Memorandum Opinion.

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The patents-in-suit underlying this action involve two lines of genetically-modified corn seed plant, which allow the expression of an insecticidal endotoxin. On May 5, 2000, Bayer brought the instant patent infringement action against Defendants, alleging that the patents-in-suit were infringed by Defendants' sale of genetically-modified corn seed lines under the names YieldGard[2] and Herculex. Defendants filed a Counterclaim on August 2, 2000 alleging that the patents-in-suit were invalid and unenforceable. On December 4, 2000, Monsanto Company ("Monsanto") brought a separate declaratory judgment action against Bayer in the Eastern District of Missouri (the "Missouri court") seeking a declaration that the YieldGard line of corn seed did not infringe Bayer's patents because the patents-in-suit are invalid and unenforceable. Bayer countersued alleging patent infringement. During the course of the Missouri court litigation, the parties to the instant action continued to proceed with pretrial discovery over the objection of Defendants.

On December 27, 2002, the Missouri court granted summary judgment in favor of Monsanto against Bayer, finding the patents-in-suit to be unenforceable and invalid. At that point, Defendants in the present action moved for summary judgment on the grounds of collateral estoppel before this Court, which the Court granted on June 20, 2003 [Doc. #296]. On November 14, 2003, the Missouri court issued an order finding the case to be "exceptional" pursuant to the fee-shifting provision of the Patent Act, 35 U.S.C. § 285, and Bayer was ordered to pay Monsanto's attorneys' fees and costs. Subsequently, Defendants in the present case

---

[2]     The "YieldGard" line was developed by a third party, Monsanto Company.

2

likewise filed motions for attorneys' fees and costs [Docs. #310, #312].

However, the Court of Appeals for the Federal Circuit later reversed the Missouri court's grant of summary judgment and remanded the case for trial. See Monsanto Co. v. Bayer BioScience N.V., 264 F. Supp. 2d 852 (E.D. Mo. 2004), *rev'd*, 363 F.3d 1235 (Fed. Cir. 2004). With respect to the proceedings in this Court, for which summary judgment had been granted based on the earlier Missouri court decision, and pursuant to a June 18, 2004 status conference and this Court's Memorandum issued the same day, Bayer filed a Motion to Vacate and Remand with the Court of Appeals for the Federal Circuit, which was granted on August 23, 2004. [Doc. #330]. Defendants then withdrew their motions for attorneys' fees and costs before this Court without prejudice to their later refiling. On February 14, 2005, this Court ordered the case stayed pending the final resolution of the proceedings before the Missouri court.

The Missouri court conducted a jury trial on remand, which again found the patents-in-suit unenforceable on the grounds of Bayer's inequitable conduct before the U.S. Patent and Trademark Office ("PTO"). Thereafter, these findings were affirmed by the Court of Appeals for the Federal Circuit. See Monsanto Co., 514 F.3d 1229, 1244 (Fed. Cir. 2008). The Missouri court then entered a judgment in favor of Monsanto. The Missouri court also determined that the case was "exceptional" pursuant to 35 U.S.C. § 285 and awarded Monsanto attorneys' fees and costs totaling $8,375,181.64. Bayer appealed once again to the Court of Appeals for the Federal Circuit, which affirmed the determinations of the Missouri court, and the United States Supreme Court denied Bayer's Petition for Writ of Certiorari. See Monsanto Co., 275 Fed. Appx. 992 (Fed. Cir. 2008), *cert. denied*, 129 S. Ct. 624 (2008).

On December 11, 2008, this Court granted DAS' Motion to Lift Stay [Doc. #348], and the Court subsequently issued an Order and Consent Judgment [Doc. #382], which entered final judgment in favor of DAS and Pioneer against Bayer. As part of the Consent Order, the parties agreed that based upon the collateral estoppel effect of the Federal Circuit's orders, each of the patents-in-suit is unenforceable. On January 29, 2009, DAS filed the Motion for Determination of Exceptional Case and Motion for Fees and Costs, presently before the Court. Respectively, DAS seeks a determination that the instant case is "exceptional" under 35 U.S.C. § 285, as well as an award of attorneys' fees and costs in the amount of $5,088,664.02.[3] Bayer filed a brief in opposition to DAS' Motions arguing that the Court should decline to award any attorneys' fees or costs to DAS, or that alternatively, the Court should significantly reduce the amount of attorneys' fees and costs awarded.

III.   APPLICATION IN THE PRESENT CASE

    A.   Motion for Determination of Exceptional Case

DAS has filed a Motion for Determination of Exceptional Case based upon the collateral estoppel effect of the Missouri court's finding of an exceptional case under 35 U.S.C. § 285. In response to this Motion, Bayer "does not challenge the collateral estoppel effect of the Missouri Court's exceptional case finding." (Pl.'s Resp. Mot. [Doc. #387, at 1].) The Court finds that pursuant to the five-part test for collateral estoppel laid out by the Fourth Circuit Court of

---

[3]   Pioneer, the other Defendant in this action, also filed a Motion for Attorney Fees [Doc. #362] on January 29, 2009. However, Pioneer and Bayer reached an agreement on Pioneer's attorney fee requrest and Pioneer therefore withdrew its request for attorneys' fees. Therefore, DAS remains the only Defendant seeking an award of attorneys' fees and costs.

4

Appeals, that the Missouri court's finding of an exceptional case applies to the present case, and that this case is "exceptional" for the same reasons laid out by the Missouri court. See Sedlack v. Braswell Svcs. Gp., Inc., 134 F.3d 219, 224 (4th Cir. 1998). Specifically, the Court notes that the issue of whether the instant case qualifies as "exceptional" under 35 U.S.C. § 285 is identical to an actually-determined, previously-litigated issue in the Missouri court, which comprised a critical and necessary part of that court's decision. In addition, Bayer had a full and fair opportunity to litigate this issue in the Missouri court, and the Missouri court's prior judgment was final and valid. See id. For these reasons, the Court concludes that this case qualifies as "exceptional" under 35 U.S.C. § 285, and it will grant DAS' Motion for Determination of Exceptional Case [Doc. #358].

      B.      Attorneys' Fees and Costs

Although Bayer concedes that the instant case is exceptional due to the collateral estoppel effect of the Missouri court's proceedings, it contends that the Court should nonetheless exercise its discretion to deny DAS' Motion for Fees and Costs altogether, or alternatively, reduce the amount of fees and costs awarded DAS. "The general rule in our legal system is that each party must pay its own attorney's fees and expenses." Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1671 (2010)(quoting Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S. Ct. 1933, 1937, 76 L. Ed. 2d 40 (1983)). However, 35 U.S.C. § 285 provides that in patent cases, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Once a court "determines that a case is exceptional, there remains in every case [the court's] freedom to exercise its discretion [to award attorneys' fees] informed by the court's familiarity with the

5

matter in litigation and the interest of justice." Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1215 (Fed. Cir. 1987)(internal citation and quotation marks omitted). A "reasonable" fee may be awarded in order to "compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." Automated Bus. Cos., Inc. v. NEC Am., Inc., 202 F.3d 1353, 1355 (Fed. Cir. 2000) (quoting Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578 (Fed. Cir.1983)). The party filing a motion for attorneys' fees bears the burden of establishing the reasonableness of a requested rate. Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990). In addition to attorneys' fees, the Court may also award reasonable costs and expenses of litigation under 35 U.S.C. § 285 in "exceptional" cases. See Central Soya Co, 723 F.2d at 1578 ("Accordingly, we conclude that the award of expenses was properly within the scope of [35 U.S.C.] § 285.").

In support of its claim that the Court should deny DAS' Motion for Fees and Costs either in whole or in part, Bayer maintains that despite its inequitable conduct which gave rise to the unenforceability of the patents-in-suit and the present "exceptional" case, Bayer has already been "severely punished" by the Missouri court's award of attorneys' fees and costs in that case. Moreover, Bayer argues that because the amount and types of fees sought by DAS are unreasonable, the Court should deny the Motion for Fees and Costs outright, or at least significantly reduce any award upfront. However, the Court's decision to award attorneys' fees and costs does not hinge on whether a party has been sufficiently "punished" in another proceeding, but instead, focuses on the issue of whether in the Court's discretion, DAS should be reimbursed for the cost of defending against a suit which Bayer has conceded was based

6

upon invalid and unenforceable patents. The Court acknowledges that Bayer may have already incurred an award of substantial legal fees and costs in the proceedings before the Missouri court. However, this Court is not persuaded by Bayer's arguments that it should decline to enter an award in favor of DAS. The Court notes that Bayer initiated these proceedings against DAS in this forum, seeking to exploit the protections afforded by the United States patent laws for patents that it improperly procured based upon its own inequitable conduct.[4] Therefore, the Court will grant DAS' Motion for Fees and Costs [Doc. #360] and will enter an award in favor of DAS for the full amount of reasonable attorneys' fees and costs that DAS incurred in the defense of the claims before this Court.

C. Calculating a Reasonable Amount of Attorneys' Fees and Expenses

DAS seeks an award of attorneys' fees and expenses in the amount of $5,088,664.02. After reviewing the parties' briefs and the documentation of the legal fees and expenses incurred by DAS, the Court concludes that upon comparing these fees to reasonable rates for patent litigation of this scale and complexity, and after the Court makes the relevant adjustments laid out below, the overall amount sought by DAS in attorneys' fees and costs is reasonable. DAS was primarily represented in this case by Orrick, Herrington & Sutcliffe, LLP ("Orrick"), who serves as DAS' national counsel for cases involving issues related to complex biotechnology and patent litigation. During the litigation of this case, DAS paid the fees in question to Orrick over a period of several years without any expectation of repayment. Moreover, the Missouri court

---

[4] Again, the Court notes that Bayer's predecessor, Aventis CropScience, N.V., initiated these proceedings against DAS and Pioneer. However, as a successor in interest to Aventis CropScience, N.V., Bayer incurs the full obligations and liabilities incurred by its predecessor.

7

found that the amount of attorneys' fees sought in that case, $8,375,181.64, was reasonable based upon the overall cost of litigation compared to the typical costs of litigation as stated in the Report of the Economic Survey of the American Intellectual Property Law Association ("AIPLA Report"). See Monsanto Co v. Bayer Cropscience, N.V., 2007 WL 1098504 (E.D. Mo. April 12, 2007); see also Mathis v. Spears, 857 F.2d 749 755-56 (Fed. Cir. 1988) (holding that a court's consideration of AIPLA Reports is proper in determining reasonable rates for attorneys' fees). AIPLA Reports, which are published biennially, provide statistical data regarding the costs of intellectual property litigation.[5] In the present case, the Court has likewise compared the rates charged to DAS to those contained in the AIPLA Report and finds that considering the time and labor required, the complexity of the questions involved, the level of skill required, the experience, reputation, and ability of the attorneys, and the award granted in the Missouri court, the overall amount sought by DAS, after making the adjustments laid out below, is generally in line with the typical costs of litigation for patent infringement cases involving damages in excess of $25 million through the end of discovery.[6] See Rum Creek Coal Sales, Inc. v. Caperton, 31

---

[5] In its Memorandum in Support of its Motion for Costs and Fees [Doc. # 361], DAS relies upon the 2005 AIPLA Report [Doc. # 361, Exh. 5], whereas Bayer maintains that the 2003 AIPLA Report should be used for purposes of calculating the reasonable amount of attorneys' fees in this case. The Court concludes that the 2005 AIPLA Report contains the appropriate comparative rates in this case, since Orrick continued to bill legal fees to DAS for substantive legal work through 2004, and the 2003 and 2005 AIPLA Reports represent the average hourly billing rates for 2002 and 2004, respectively.

[6] The Court notes that while the total award of attorneys' fees and costs sought in this case is higher than the mean and median amounts listed in the AIPLA Report, the amount sought by DAS is in line with the third quartile rate listed in the AIPLA Report. Due to the factors listed above, the Court finds that the overall amount of attorneys' fees and costs sought is not unreasonable when compared to the figures listed in the AIPLA Report, despite the fact that this amount may exceed the average typical litigation costs in similar cases.

8

F.3d 169, 175 (4th Cir. 1994)(citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)).

Further, the Court has also considered Bayer's argument that a "lodestar approach" should be utilized in order to determine the reasonableness of the fee sought by DAS. The Supreme Court has noted that the lodestar approach has "achieved dominance in the federal courts" with regard to setting a reasonable amount of attorneys' fees. Perdue, 130 S. Ct. at 1672 (quoting Gisbrecht v. Barnhart, 535 U.S. 789, 801, 122 S. Ct. 1817, 1825, 152 L. Ed. 2d 996 (2002)). The lodestar amount is "[t]he most useful starting point for determining the amount of a reasonable fee," and is calculated by taking "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433-34, 103 S. Ct. at 1939; Rum Creek, 31 F.3d at 174-75 (4th Cir. 1994); Daly v. Hill, 790 F.2d 1071, 1077-78 (4th Cir. 1986). In determining the reasonable rate and reasonable number of hours in calculating the lodestar, the Court may be guided by the twelve Johnson factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Rum Creek, 31 F.3d at 175 (citing Johnson, 488 F.2d at 717-19). The Court will therefore consider these factors to determine (1) the reasonable number of hours and (2) the reasonable rate to be used in this case to determine whether the fees charged to DAS are in line with these

9

rates.[7] See Daly, 790 F.2d at 1078.

Generally, "[t]he community in which the court sits is the appropriate starting point for selecting the proper rate." Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 317 (4th Cir. 1988) (citing Donnell v. United States, 682 F.2d 240, 251 (D.C. Cir. 1982)). However, in certain cases, "[t]he complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally." Id. at 252 (quoting Chrapliwy v. Uniroyal, Inc., 670 F.2d 760, 768 (7th Cir. 1982)). In these instances, two questions should be considered in determining whether non-local rates are reasonable in awarding attorneys' fees: "are services of like quality truly available in the locality where the services are rendered; and did the party choosing the attorney from elsewhere act reasonably in making that choice?" Id. (citing Chrapliwy, 670 F.2d at 769).

In the present case, DAS used both local counsel, Smith Moore,[8] as well as Orrick, their national counsel based in New York City. Here, Bayer does not challenge the reasonableness of the rates charged by Smith Moore. However, for Orrick attorneys, who charged higher New

---

[7] The Court notes that the Supreme Court recently held in Perdue that to the extent the Johnson factors are viewed as an alternative to the lodestar method, the lodestar remains the proper method for calculating attorneys' fees. See Perdue, 130 S. Ct. at 1662. The Supreme Court also reiterated that "most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," such as the novelty and complexity of a case and the quality of an attorney's performance are subsumed in the lodestar calculation. Id. (quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 566, 106 S. Ct. 3088, 3098, 92 L. Ed. 2d 439 (1986)). Accordingly, the Court will consider the relevant Johnson factors only within the context of determining a reasonable number of hours and reasonable rate for the purposes of the lodestar calculation. See also Daly, 790 F.2d at 1078 ("The proper point at which the Johnson factors are to be considered is in determining the reasonable rate and the reasonable hours. A fee based upon reasonable rates and hours is presumed to be fully compensatory without producing a windfall.").

[8] Now Smith Moore Leatherwood, LLP.

York City rates, Bayer argues the DAS should be reimbursed at the relevant local rates rather than the New York City rates for Orrick's representation throughout the course of these proceedings. In response, DAS argues that it was reasonable to retain national counsel at a higher rate for a number of reasons, including that this litigation involved complex legal issues related to biotechnology and patent law, that Orrick served as DAS' national counsel for all litigation related to the patents-in-suit, that DAS paid these fees without any expectation of an award of attorneys' fees, and that Bayer itself used non-local lead counsel in the proceedings before this Court. In these circumstances, although the Court is confident that local counsel could have capably represented DAS in the course of typical patent litigation proceedings, DAS opted to utilize Orrick in this instance on account of the various advantages they offered. First, Orrick represents DAS in its biotechnology patent litigation nationally, which fosters familiarity with the client and the issues involved in the litigation, as well as greater overall efficiency. In addition, DAS continues to use Orrick in its biotechnology patent litigation, and during the present proceedings, DAS paid the total amount of fees to Orrick over the course of several years without any expectation of reimbursement. For these reasons, the Court concludes that Orrick provided a unique service to DAS that was not truly available locally, including its familiarity with issues related to its national representation of DAS in biotechnology patent litigation. In addition, the Court concludes that DAS acted reasonably in retaining Orrick for its representation in this matter. Therefore, the Court will compare Orrick's billing rates with the average hourly billing rates for intellectual property attorneys in New York City, as contained in the AIPLA Reports.

11

As noted above, Bayer does not challenge the reasonableness of the rates charged by Smith Moore, which reflect a mean rate of $201.47/hour. For attorneys at Orrick, the billing statements reflect a mean rate of $361.95/hour. The Court finds that this figure is in line with the average billing rate for intellectual property work across all attorneys and firms in New York City, who bill a mean rate of $331.00/hour and a third quartile rate of $396.00/hour, according to the AIPLA Report. The Court has also reviewed each individual attorney's billing rates and concludes that the rates billed to DAS are generally in line with average individual billing rates found in the AIPLA Report. Further, DAS' arguments regarding the reasonableness of its billed rates are supported by the fact that Orrick billed DAS at discounted rates pursuant to the parties' negotiated billing arrangement.

However, the Court does note that several Orrick attorneys billed DAS at rates in excess of $500 per hour during the course of their representation in this matter. The Court finds that the fees charged by these attorneys are outside the reasonable range of hourly billing rates for partners in New York City in this type of suit. Hence, the Court will reduce the rates billed by Mr. Isackson, Mr. Coggio, and Mr. Thomasch accordingly. The Court acknowledges that these rates were billed by senior attorneys with specializations in the fields of biotechnology and patent litigation, and that therefore, these attorneys typically command billing rates above the relevant mean rate. For these reasons, the Court will reduce their respective billing rates to the third quartile rate for partner billing rates for 2004 ($479/hour) according to the AIPLA Report. Therefore, the Court will deduct a total of $51,606.00 from the ultimate award of attorneys'

12

Case 1:00-cv-00463-JAB-PTS   Document 418   Filed 06/08/10   Page 12 of 17

fees.[9]

In addition, Bayer maintains that DAS was improperly charged full billing rates for travel time and that these fees are unreasonable under 35 U.S.C. § 285. The Court has reviewed the billing documents submitted by DAS and concludes that in certain instances, this claim is well-founded. The Court finds that a reasonable rate for travel time is half the normal hourly billing rate.[10] Therefore, the Court will also deduct $139,029.27 in order to accommodate this reasonable rate for travel time.[11]

Thus, the Court finds that a deduction in the amount of $139,029.27 to reflect a one-half rate for travel time, and a deduction of $51,606.00 to correct certain partners' billing rates, for a total deduction of $190,635.27, is required to establish a reasonable hourly billing rate for

---

[9] Reducing the billing rates for Mr. Isackson, Mr. Coggio, and Mr. Thomasch to the rate of $479/hour, this results in deductions in the amounts of $41,932.00, $5,768.00, and $3,906.00, respectively.

[10] Further, in several instances, travel expenses billed to DAS were included in the same billing entry as other legal services. The Court is unable, after conducting a thorough review of the billing records in this case, to determine which portion of the rates charged to DAS were applied to travel time and which portion of the rates were properly billed at the full rate for legal services. Thus, where DAS has failed to include separate items on its billing statements for travel expenses and the Court is otherwise unable to discern which portion of the hours billed represent travel time, the Court finds that DAS has not met its burden of establishing the reasonableness of the rates charged, and the Court will therefore apply the reduced travel rate to all of the hours billed within each of these billing entries. See Hensley, 461 U.S. at 437, 103 S. Ct. at 1941 (holding that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates").

[11] In particular, the Court has deducted the following amounts in order to reflect the reasonable one-half billing rates: Arnese ($1,688.12), Chachkes ($29,264.60), Cowan ($162.50), Meulemann ($4,468.75), Grigore ($10,175.62), Hopkins ($1,453.50), Howard ($55,595.93), Isackson ($12,725.87), Marcus ($115.00), Mendez ($1,435.26), Molenda ($7,321.87), Pietrofere ($1,425.00), Stone ($6,285.00), Thomasch ($6,542.25), and Wells ($370.00).

13

purposes of the lodestar calculation.

The Court must then multiply the reasonable rate by the reasonable hours expended. To establish the number of hours reasonably expended, a plaintiff "should submit evidence supporting the hours worked . . . ." Hensley, 461 U.S. at 433, 103 S. Ct. at 1939. The number of hours should be reduced to exclude "hours that are excessive, redundant, or otherwise unnecessary" in order to reflect the number of hours that would properly be billed to the client. Id. at 434, 103 S. Ct. at 1939-40; Daly, 790 F.2d at 1079. Here, DAS was billed for a total of 14,059 hours throughout the course of litigation in this matter. In evaluating whether these hours were reasonably expended, the Court finds relevant the first, second, third, and eighth Johnson factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; and (8) the amount involved and the results obtained.

Bayer contends that the hours billed to DAS should be reduced for the purposes of calculating the lodestar amount for the following reasons: (a) Orrick's billing statements are too vague; (b) Orrick conducted duplicative and redundant billing practices due to overstaffing, engaged in unjustified motions practice, and improperly billed DAS for "Learning Curve-Type Work"; and (c) Orrick billed for "Massive Amounts" of clerical and administrative work and its costs are otherwise excessive and unrecoverable. The Court will address Bayer's objections in turn.

Bayer first maintains that Orrick's use of "block" time entries, where multiple tasks are listed in one entry, was improper. As a remedy, Bayer argues that the Court should impose an across-the-board reduction of at least 15% in the amount of billed hours recoverable by DAS. However, with regard to the "block" entries billed to DAS, the Court does not find that these entries reflect the expenditure of unreasonable amounts of time, considering the specific tasks contained within each entry, which include activities such as legal research, document review, and conducting case-related telephone calls. The Court finds that considering the time and labor required and the complexity of the legal questions presented, that the amounts of time expended in the allegedly vague entries cited by Bayer were reasonable. Further, the Court finds no support for Bayer's argument that the inclusion of multiple tasks in single billing entries necessitates a 15% reduction in the number of reimbursable hours sought by DAS. As recently cautioned by the Supreme Court, all aspects of an attorneys' fee determination must be accompanied by a "reasonably specific explanation" of the Court's actions, including a reduction in the amount of fees recoverable. Perdue, 130 S. Ct. at 1676. The Court does not find that a "reasonably specific" connection exists between DAS' allegedly vague billing entries and the proposed 15% reduction of the overall number of hours recoverable by DAS.

Similarly, Bayer also seeks a reduction of "not less than 20%" of DAS' billed hours on the grounds that Orrick allegedly engaged in overstaffing and unnecessary motions practice during the course of its representation. Bayer also argues that DAS was improperly billed for "learning curve-type work" in the form of legal research. Once more, the Court notes that it finds no "reasonably specific" nexus between the 20% reduction sought and the allegedly

15

unreasonable hours billed to DAS. In addition, regarding the use of multiple attorneys at depositions and hearings and the hours billed to DAS for legal research, the Court finds that considering the time and labor required, the complexity of the litigation, the level of skill required, and the amount of damages involved in litigating this case, that the time billed by Orrick reflects hours reasonably expended in the prudent representation of its client, DAS. For these reasons, the Court finds that Orrick's billing statements do not reflect hours billed due to overstaffing, unreasonable motions practice, or unreasonable legal research.

Finally, Bayer maintains that the Court should institute a further reduction of "not less than 10%" based on the amount of expenses sought by DAS and the amount of clerical and administrative work that it was billed. The Court has reviewed the billing records submitted by DAS and finds that no "reasonably specific" rationale exists for a 10% across-the-board reduction. Further, the Court finds that these costs were reasonably-expended, especially in light of the time and labor involved in conducting these tasks. Therefore, the Court will likewise award DAS reasonable costs and expenses. See Central Soya Co, 723 F.2d at 1578.

D.   Tabulation of Total Recoverable Fees & Expenses

The Court will grant DAS' Motion for Fees and Costs [Doc. #360]. As outlined above, the Court will deduct $190,635.27 from the amount sought by DAS, which leaves a total award of $4,898,028.75.

16

IV. CONCLUSION

Therefore, for the reasons stated above, IT IS HEREBY ORDERED that DAS' Motion for Determination of Exceptional Case [Doc. #358] is GRANTED. In addition, after taking into account the relevant deductions as outlined the preceding discussion, IT IS ORDERED that DAS' Motion for Fees and Costs [Doc. #360] is GRANTED. IT IS THEREFORE ORDERED that DAS is entitled to recover from Plaintiff reasonable attorneys' fees and costs in the amount of $4,898,028.75.

An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 8th day of June, 2010.

/s/ James A. Beaty
United States District Judge